**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  ) | 8:07CR78 |
| Plaintiff,  ) ) | |
| vs.  ) ) | REPORT AND |
| SCOTT ALAN JONES,  ) ) | RECOMMENDATION |
| Defendant.  ) | |

This matter is before the court on the motion to suppress filed by defendant Scott Alan Jones (Jones) (Filing No. 47). Jones is charged in the Indictment with possessing a firearm after having been convicted of a felony (Count I) in violation of 18 U.S.C. § 922(g) and with a criminal forfeiture count (Count II) in violation of 18 U.S.C. 924(d). Jones seeks to suppress evidence seized by officers of the Omaha Police Department (OPD) from a vehicle and residence at 4537 Franklin Street in Omaha, Nebraska, on January 11, 2007, and to suppress any statements Jones made to law enforcement officers on that same day.

The court held a hearing on the motion on June 28, 2007. Jones was present for the hearing along with his counsel, Assistant Federal Public Defender David M. O'Neill. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. During the hearing, the court heard the testimony of OPD Officers William A. Hardisty, Jr. (Officer Hardisty) and Sean Fontana (Officer Fontana). The court also received into evidence a copy of an OPD Permission to Search form (Exhibit 1) and an OPD Rights Advisory Form (Exhibit 2). A transcript (TR.) of the hearing was filed on July 3, 2007 (Filing No. 56).

**FINDINGS OF FACT**

On January 11, 2007, Officer Hardisty had worked at the OPD as a police officer for approximately five and a half years (TR. 3). Officer Hardisty was assigned to the uniform patrol bureau, where he operated a police cruiser, went on routine patrol, and answered radio calls (TR. 3).

Officer Fontana has worked at the OPD as a police officer for about seven years (TR. 33).

Around 9:00 a.m. on January 11, 2007, Officer Hardisty responded to a radio call reporting an armed disturbance at 4537 Franklin Street in Omaha, Nebraska (TR. 4). Officer Hardisty heard over the radio there was a report of an armed individual wearing a NASCAR jacket and gray sweat pants (TR. 5). About the same time, Officer Fontana and his partner, Officer Coral Walker (Officer Walker), were dispatched to 4537 Franklin Street in Omaha, Nebraska (TR. 34). Officer Fontana and his partner were told that there was an armed party located at the residence (TR. 34). They were told the party, named Scott Jones, was a white male born April 12, 1971, and was wearing a blue coat (TR. 34). Dispatch indicated to Officers Fontana and Walker that dispatch had received a call from Jones's mother, who claimed Jones was supposed to be at this address armed with a handgun (TR. 34).

Officer Hardisty arrived at 4537 Franklin prior to Officers Fontana and Walker and drove into the alley behind the residence located at 4537 Franklin (TR. 4-5). As Officer Hardisty pulled into the alley, he was flagged down by a man (Jones) standing in the back of the residence who matched the description given to Hardisty over the radio (TR. 4-5). Officer Hardisty stopped, exited the vehicle, and asked Jones what the problem was and if Jones was armed (TR. 5). Jones responded that he was not armed, and he was at 4537 Franklin to retrieve some of his property (TR. 5). Officer Hardisty conducted a pat down of Jones, which confirmed Jones was not carrying any weapons (TR. 6). Jones told Officer Hardisty he (Jones) lived at 4537 Franklin until he was evicted a month before (TR. 6). Shortly after patting Jones down, Officer Christine Berryhill (Officer Berryhill), and Celeste Garvis (Garvis) arrived on the scene (TR. 7). A short while later, Officer Fontana and Officer Walker arrived on the scene (TR. 35).

Officer Fontana exited his vehicle and walked towards Officer Hardisty, who asked Jones if Jones had a gun (TR. 35). Jones replied he did not have a gun. Officer Fontana asked Jones if he had any identification with him (TR. 35-36). Jones replied he had some identification in his blue GMC Suburban and started walking towards the car 20 to 30 feet away (TR. 36). Officer Fontana stopped Jones as Jones walked towards the car because there was a report of a gun somewhere on the scene which had not been located (TR. 36). Meanwhile, Officer Hardisty spoke with Garvis, who said the man was her son, Scott Alan

Jones (TR. 9). Garvis said a representative of the management at 4537 Franklin had previously pulled a knife on Jones when Jones tried to retrieve his property located at the residence (TR. 9). Garvis said Jones had been at her residence before with a black handgun, which he had because of the previous altercation with management agent (TR. 9). While Officer Hardisty was speaking with Garvis, Officer Fontana ran a computer data check on Jones's GMC Suburban, which revealed the GMC Suburban was registered to Jones (TR. 37). There was also a flatbed trailer attached to the GMC Suburban registered to Jones (TR. 11).

While Officer Hardisty had been speaking with Garvis, and Officer Fontana had been speaking with Jones, Garvis and Jones were simultaneously involved in an increasingly volatile exchange between one another (TR. 12, 37). When Officer Fontana began questioning Jones about his ID, Garvis began to approach the officers and Jones (TR. 37). Jones began yelling at Garvis about why Garvis had called the police, and how could she do this to him (TR. 37). Garvis yelled back at Jones to stop lying to the police and tell them where the gun is. Garvis said to Jones, "You know you have it." Garvis said saying she was doing this for Jones's own good (TR. 12, 37). Jones became very upset with Garvis and said to Garvis "Why would you do this to me?" Jones said he did not know what Garvis was talking about (TR. 12). In an effort to calm the situation in order to continue questioning Jones, Officer Fontana handcuffed Jones and placed him in the backseat of Officer Fontana's police vehicle (TR. 13, 37).

At the same time Officer Fontana was placing Jones in the back of Officer Fontana's police cruiser, a man identified as Lurlin Leger (Leger) appeared on the scene (TR. 13, 38). Leger identified himself as the manager of the rental property located at 4537 Franklin (TR. 13). In response to Leger's arrival, Jones, who was at the door to Officer Fontana police vehicle, told Officer Fontana that Leger had pulled a knife on Jones, and then said, "That's why I brought the gun," (TR. 38). Jones told Officer Fontana this on his (Jones's) own accord and without questioning by Officer Fontana (TR. 38-39). Officer Fontana then placed Jones under arrest because of the disturbance Jones was causing with Garvis (TR. 39). Once Jones was inside the police vehicle, Jones started kicking the partition between the front seat and back seat of Officer Fontana's police vehicle (TR. 39).

Once Jones was inside Officer Fontana's police vehicle, Officer Fontana began to speak with Leger (TR. 39). Leger told Officer Fontana that Jones had been evicted from 4537 Franklin on December 11, 2006, approximately one month before (TR. 40). Officer Fontana ran a data check on the status of Jones's driver's license as well as a criminal record check on Jones (TR. 40-41). While Officer Fontana was waiting to receive the results of the data check, Officer Hardisty moved next to Jones's GMC Suburban and looked inside through the driver's side window, which had been rolled down. (TR. 14-15). Officer Hardisty observed a handle of a black handgun in a holster which was located behind the center console on the floor of the GMC Suburban (TR. 14). Officer Hardisty seized the handgun by entering the GMC Suburban from the driver-side rear door (TR. 15). The door was unlocked (TR. 15). The holster was attached to a fanny pack, which contained a state identification card with Jones's name and photograph on the front (TR. 15-16). Officer Hardisty reported to Officer Fontana that a handgun had been found in the GMC Suburban (TR. 48). At this time the data and criminal record check had come back, indicating Jones's driver's license had been suspended in September 2006 because his insurance was cancelled, and that Jones had been convicted of a felony (TR. 40-41, 48).

Officer Fontana transported Jones to a police station where Jones was booked for driving under suspension, disorderly conduct, possession of an unregistered firearm, felon in possession of a firearm, and carrying a concealed weapon (TR. 41). Then Officer Fontana read Jones his ***Miranda*** rights which Jones acknowledged (TR. 41, Exhibit 2). Officer Fontana proceeded to ask Jones about the firearm and how Jones obtained the firearm (TR. 43). Jones could not recall the name of the person he obtained the firearm from, but Jones stated he had obtained it about a year earlier (TR. 43). Jones insisted he was not carrying the weapon, and admitted he was only in possession of it (TR. 43).

After Officer Fontana transported Jones to the police station, Officer Hardisty and Officer Berryhill remained on the scene and asked Leger for permission to search the residence (TR, 18). Leger gave his permission to search by executing a permission to search form (TR. 18, Exhibit 1). Officer Hardisty and Officer Berryhill searched the premises and, in a bedroom identified by Garvis as Jones's deceased father's bedroom, Officer Hardisty found several 20-gauge shotgun shells (TR. 18). Leger indicated to Officer

Hardisty that Jones's father had died six months before (TR. 18). Underneath a bed in a room identified by Garvis as Jones's bedroom, Officer Berryhill found a case for a nine millimeter Smith & Wesson handgun bearing the same serial number as the handgun retrieved by Officer Hardisty in Jones's GMC Suburban (TR. 19-20). The case contained 143 rounds of ammunition for the gun (TR. 20).

## CONCLUSION OF LAW

### A. Officer Hardisty's Initial Encounter with Jones

Encounters between the police and citizens fall into three general categories:

(1)   consensual or voluntary encounters, which are not seizures and do not implicate the Fourth Amendment, **see, e.g., Florida v. Bostick**, 501 U.S. 429, 434 (1991); **United States v. Tarantola**, 332 F.3d 498, 499 (8th Cir. 2003).

(2)   investigative detentions, which are seizures of limited scope and duration within the meaning of the Fourth Amendment and must be supported by a reasonable articulable suspicion of criminal activity, **see, e.g., United States v. Sokolow**, 490 U.S. 1, 7 (1989); **Terry v. Ohio**, 392 U.S. 1 (1968); **United States v. Maltais**, 403 F.3d 550, 554 (8th Cir. 2005).

(3)   physical arrests, which must be supported by probable cause. **U.S. CONST. amend. IV.**

Jones argues that Officer Hardisty and Officer Fontana needed reasonable suspicion to approach him and ask him questions relating to the report of an armed disturbance. While Hardisty is a police officer, and any questioning by a police officer involves coercive aspects to it simply by reason of the confrontation, Jones readily and without reservation answered the officers' questions related to their investigation of a reported armed individual in the area. Further, the initial police encounter was made by Officer Hardisty, when Jones flagged down Officer Hardisty's vehicle in the alley behind 4537 Franklin. The initial encounter is clearly voluntary, and contains no reasonable signs of coercion on the part of the officers. Therefore Jones's motion to suppress all evidence gained as the result of the Jones's initial encounter with police is without merit.

### B.    Detention of Jones

Jones argues Officer Fontana did not have the probable cause needed to detain Jones, handcuff him, and place him in the backseat of Officer Fontana's police vehicle.

Officer Fontana testified he detained Jones and arrested Jones after Jones became volatile when Jones's mother, Garvis, arrived at the scene. Probable cause to conduct a warrantless arrest exists when, at the moment of arrest, police officers have knowledge of reasonably trustworthy facts and circumstances sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested. ***United States v. Hartje***, 251 F.3d 771, (8th Cir. 2001); **see *Beck v. Ohio***, 379 U.S. 89, 91 (1964). In reviewing the "determination of probable cause, we look at the totality of the circumstances and give due weight to the inferences that can be drawn from the officers' experience." ***United States v. Roberson***, 439 F.3d 934, 939 (8th Cir. 2006).

Here, Officers Fontana, Hardisty, and Walker were conducting an investigation related to a report of a armed man in the vicinity. Jones became a target of their investigation because he matched the specific description given to them of a white male wearing gray sweat pants and a blue NASCAR jacket. The officers asked Jones if he had a gun, and Jones denied that he did. The officers asked Jones if they could perform a pat down, which confirmed Jones's assertion he had no gun on his person. However, once Garvis appeared on the scene, Jones's demeanor became volatile and potentially violent. Jones argues that, at the time of Jones's arrest, the officers did not have probable cause to believe there was a weapon present on the scene. Even so, at the time Officer Fontana arrested Jones, Officer Fontana testified "at the very least he was under arrest for disorderly conduct." The facts and circumstances surrounding a finding of probable cause for the offense of disorderly conduct are much different than what would accompany a finding of probable cause for the weapon related charges on which Jones was later booked.

Omaha Municipal Code §20-42, in relevant part, makes it punishable by a fine not exceeding $500, or a term of imprisonment by no more than six months, or both, for a person to knowingly create annoyance or alarm, or the risk thereof, to any person by engaging in threatening or violent conduct, or by using abusive, threatening, or other fighting language or gestures. OMAHA, NEB., CODE §§ 1-10, 20-42 (2006). Nebraska Law allows

officers to arrest persons for whom they have probable cause to believe have committed both felonies and misdemeanors in their presence. NEB. REV. STAT. §29-404.02 (2006).

Officer Fontana knew at the time of the arrest Jones was loudly yelling at his mother. Officer Fontana was also aware Jones matched the description of a man alleged to have a gun, and aware Garvis alleged on the scene that Jones had a gun. Officer Fontana did not know at the time the original description was given by Garvis. Even though a pat down conducted on Jones's person revealed that Jones was not carrying any weapons. Officer Fontana could have drawn a reasonable inference that a man alleged by two sources to be carrying a gun would be more susceptible to engage in potentially violent conduct. Once Jones began his argument with Garvis and became noticeably angry with Garvis, Officer Fontana had probable cause to believe that Jones was engaged in disorderly conduct. Therefore Jones's motion to suppress all evidence gained as the result of an illegal arrest is without merit.

### C. Search and Seizure of Property From Jones's GMC Suburban

Jones argues officers did not have probable cause to search Jones's vehicle and seize the gun without a warrant. The officers responded to a call that a man was armed and causing a disturbance at the location. It was apparent Jones was the person causing the disturbance and a gun was observed in plain view in Jones' vehicle. There was probable cause to seize the firearm as evidence of the armed disturbance call. ***Skokos v. Rhoades***, 440 F3d 957 (8th Cir. 2006). Further, while the officers were not aware of Jones's status as a convicted felon immediately prior to the seizure of the firearm, moments thereafter, the officers learned of Jones's status as a convicted felon. The firearm would have been inevitably seized before the officers left the scene that evening. Jones's motion to suppress the seizure of the firearm is without merit.

### D. Jones's Statements Regarding Possession of the Firearm at the Scene

Jones argues statements made by him as he was about to be placed in the police cruiser should be suppressed due to the fact that he was illegally detained and was not given

his *Miranda* rights at the scene.  Failure to advise an in-custodial defendant of such rights will render statements inadmissible made by such a defendant as a result of police questioning.  The definition of questioning includes, "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the [defendant]."  ***United States v. Koontz***, 143 F.3d 408, 411 (8th Cir. 1998) (**citing *Rhode Island v. Innis***, 446 U.S. 291, 300-01 (1980)).

Jones's statement was not in response to police questioning.  The statement was in response to the property manager's arrival at the scene, when Jones, who was at the door of Officer Fontana's police vehicle, told Officer Fontana that Leger had pulled a knife on Jones, and then said, "That's why I brought the gun."  "*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers."  ***Butzin v. Wood***, 886 F.2d 1016, 1018 (8th Cir. 1989).  The court finds the statements made by Jones were not in response to any interrogation by officers and Jones's motion to suppress such statement is without merit.

### E.    Jones's Statements at Police Headquarters

Jones seeks to suppress his statements made to police officers at police headquarters following his transportation from the scene.  The touchstone for the admissibility of a defendant's statements is voluntariness.  ***Brown v. Mississippi***, 297 U.S. 278 (1936).  The court must look to the totality of circumstances in determining whether or not the statements were voluntary.  ***Mincey v. Arizona***, 437 U.S. 385 (1978); ***Colorado v. Connelly***, 479 U.S. 157 (1986); ***Schneckloth v. Bustamonte***, 412 U.S. 218 (1973).  In this case, Jones was advised of his constitutional rights pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966).  There is no evidence Jones did not understand the advice of rights.

Jones acknowledges he was advised of his *Miranda* rights at police headquarters but asserts the statements were the fruit of the illegal detention, seizure, and arrest at the scene.  Having already found that Jones's vehicle was not illegally searched nor was he illegally detained or arrested, therefore the statements Jones made at police headquarters should

not be suppressed as the fruit of an illegal search, arrest, or detention pursuant to ***Wong Sun v. United States***, 371 U.S. 471 (1963).

### F.   Post Arrest Search of the Premises

Following Jones's arrest, the premises were searched with the permission of the owner's agent. Jones had no expectation of privacy in a house from which he moved and had no legal right to enter. Jones has no standing in which to challenge the search of the premises. **See *United States v. Young***, 68 Fed.Appx. 744 (8th Cir. 2003). Jones's request to suppress any evidence seized from the premises is without merit.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Jones's motion to suppress (Filing No. 47) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of August, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge